# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **LARRY DAVID WOOD, JR. and** ] | |
| **KAREN WILBORN WOOD,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | **Case No.:  4:08-CV-1477-VEH** |
| **v.** ] | |
| ] | |
| **OPTION ONE MORTGAGE** ] | |
| **CORPORATION, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiffs Larry David Wood, Jr. and his wife, Karen Wilborn Wood, (collectively the "Woods"), originally filed this real estate contract dispute in the Circuit Court of DeKalb County, Alabama, against Defendants Option One Mortgage Corporation ("Option One"); Wells Fargo Bank, N.A. ("Wells Fargo"); and Fidelity National Foreclosure & Bankruptcy Solutions ("Fidelity") on or about July 16, 2008. (Doc. 1 ¶ 1; *see also* Doc. 1 at Ex. A at Compl. at 1).  The case stems from injuries and damages purportedly sustained by the Woods as a result of a foreclosure sale and the placement of force-placed insurance on their home which, on or about November 2, 2006, suffered fire damage and became uninhabitable.   (Doc. 1 ¶¶ 1, 11; Doc. 1 at Ex. A at Compl. ¶¶ 9, 12-15).

Defendant Fidelity removed this litigation to this court on August 15, 2008, asserting diversity under 28 U.S.C. § 1332 as the basis for federal jurisdiction. (Doc. 1 at 1; *id.* ¶ 3).[1]  The court now has before it the Woods' Motion to Remand (Doc. 5) filed on August 21,  2008.  Fidelity filed its opposition (Doc. 8) to the Woods' Motion to Remand on September 4, 2008, and the Woods filed their reply (Doc. 13) on September 11, 2008.

Also pending before the court is Fidelity's Motion to Dismiss (Doc. 2) filed on August 20, 2008.  Additionally, the court acknowledges Fidelity's request in its petition to present "oral argument in support of its position[.]"  (Doc. 1 ¶ 18).[2]

Because the court concludes that it lacks subject matter jurisdiction, the Woods' Motion to Remand is due to be granted.  Further, because remand is appropriate, the court does not reach the substance of Fidelity's Motion to Dismiss.

## II.    SUBJECT MATTER JURISDICTION

### A.    General Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United

---

[1]  Option One and Wells Fargo joined in Fidelity's removal petition on September 5, 2008.  (Doc. 11 at 1).

[2]  The court denies Fidelity's request to present oral argument for the reasons explained at the end of this memorandum opinion.

States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal citations omitted). "Accordingly, when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id.* (internal citations omitted). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410 (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the

Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted).  Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with the express exception of civil rights cases that have been removed  - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review.  More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and*

*Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

### B.      Diversity Jurisdiction

Fidelity premises its removal upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.      Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). The Woods do not dispute Fidelity's satisfaction of the diversity of citizenship requirement. (*See generally* Doc. 5).

### 2.    Amount in Controversy Requirement

In their Motion to Remand, the Woods do challenge Fidelity's satisfaction of the amount in controversy requirement.  (Doc. 5 ¶¶ 22-38).  Regardless, it is beyond question that this court has an independent jurisdictional duty to evaluate its sufficiency.

Regarding amount in controversy, "when Congress created lower federal courts, it limited their diversity jurisdiction to cases in which there was a minimum monetary amount in controversy between the parties." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing *Snyder v. Harris*, 394 U.S. 332, 334 (1969)). Today, the threshold amount in controversy for diversity jurisdiction, excluding interests and costs, is $75,000.  28 U.S.C. § 1332.

"[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (2000); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2877 (2008).

6

In assessing the propriety of removal, "the court considers the documents received by the defendant from the plaintiff . . . and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery*, 483 F.3d at 1211 (emphasis added). In *Lowery*, the Eleventh Circuit was at a loss to determine by what means it could make an informed assessment of the amount in controversy because the damages were unspecified and only the bare pleadings were available. *Id*. at 1210.

Similarly, in this case, the court finds that the allegations of the amount in controversy made in the notice of removal coupled with the unspecified damages contained in the complaint are insufficient to establish satisfaction of the amount in controversy requirement. In its notice of removal, Fidelity unpersuasively maintains that even though the Woods have failed to ask for any specific monetary award, their assertion of claims for wrongful foreclosure and improper mortgage charges and their demand for unspecified compensatory and punitive damages make this case appropriately removable. (Doc. 1 ¶¶ 11-12). Such an amount in controversy statement is insufficient under *Lowery*'s holding that a removing party show the existence of federal jurisdiction without any ambiguity. *Id.*, 483 F.3d at 1214.

In its petition, Fidelity does not even acknowledge the existence of *Lowery* much less explain how its present removal satisfies the opinion's multi-faceted

7

jurisdictional standard.   Instead, Fidelity unhelpfully cites <u>only</u> to pre-*Lowery* decisions.   (*See, e.g.,* Doc. 1 ¶¶ 9, 10, 12, 14 (citing *Kilpatrick v. Martin K. Eby Constr. Co., Inc.*, 708 F. Supp. 1241, 1242-43 (N.D. Ala. 1989); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1989); *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (other citations omitted)).

Additionally, while Fidelity cites to several jury verdicts from various counties in its notice of removal that are in excess of the jurisdictional minimum, (*see, e.g.*, Doc. 1 ¶ 13 (citing *Cottrell v. NCAA*, Tuscaloosa Circuit Court, CV 03-810; *Myrick v. Barron*, DeKalb Circuit Court, CV 97-273; *Hare v. Mutual Savings Life Ins. Co.*, Walker Circuit Court, CV 94-529; *Key v. Prudential Ins. Co.*, Marshall Circuit Court, CV 93-479; *ConAgra v. Turner*; Morgan Circuit Court; 98-58; *Indus. Techs. Inc. v. Jacobs Bank*, Jackson Circuit Court, CV 92-203; *KMart v. West*, Madison Circuit Court, CV 97-239)), *Lowery* makes it clear that this court should only consider those documents "received by" Fidelity from the Woods in assessing satisfaction of the amount in controversy requirement.  *Lowery*, 483 F.3d at 1211.

Moreover, even if a removing party's reliance upon evidence of comparable jury verdicts to support the amount in controversy requirement survives *Lowery*, only one of the decisions arises out of DeKalb County.  Further, Fidelity fails to indicate

8

which, if any, of those jury decisions involve facts, claims, injuries, and/or defenses similar to those that are present in this litigation.  Accordingly, no underlying basis exists for Fidelity (or this court) to reasonably determine that the collected verdicts relied upon by it are fairly representative of the value of the Woods' case.

Similarly, while Fidelity's opposition at least acknowledges the existence of *Lowery* (Doc. 8 at 2), Fidelity, once again, omits any analysis of it and relies upon no post-*Lowery* cases to show how it has satisfied the requirements of the controlling authority.  Moreover, Fidelity completely fails to address, much less distinguish, <u>any</u> of the post-*Lowery* decisions cited by the Woods that support remand.

Further in its opposition (and in the absence of any referenced legal authority), Fidelity also unsuccessfully argues that the Woods' reference, within their complaint, to an insurance payment of $138,482.00 and a mortgage obligation of $145,000.00 mean that "[t]he Court may easily deduce from these allegations that any financing would require similar amounts, and those amounts are greater than the $75,000.00 jurisdictional amount required for diversity jurisdiction."  (Doc. 8 at 2-3 (emphasis added)).  However, the standard under *Lowery* is not whether this court "may easily deduce" satisfaction of the amount in controversy requirement, but rather whether <u>Fidelity has unambiguously established</u> that the monetary threshold has been met.

Moreover, as the Woods explain in their reply, the separate personal check that

9

was never applied to fully satisfy the entire mortgage obligation amounted to only $6,304.04, well below the jurisdictional minimum.  (Doc. 13 at 3; Doc. 1 at Ex. A at Compl. ¶ 11).  Therefore, the specific monetary references included in the Woods' complaint do not <u>unambiguously</u> establish the requisite amount in controversy; instead, if anything, they appear to demonstrate just the opposite.

Furthermore, several persuasive post-*Lowery* opinions exist, in addition to the ones cited by the Woods, that support remanding this case for Fidelity's failure to satisfy the amount in controversy requirement.  *See, e.g., Beasley v. Fred's Inc.*, No. 08-0120-WS-C, 2008 WL 899249, at *1 (S.D. Ala. Mar. 31, 2008) (remanding *sua sponte* because "[t]he amount in controversy [was] not apparent from the face of the complaint, because there [was] no way to determine from the complaint whether the plaintiff has been injured so badly as to make an award of over $75,000 more likely than not"); *Spivey v. Fred's Inc.*, 554 F. Supp. 2d 1271, 1275 (M.D. Ala. 2008) (remanding *sua sponte* on the basis that the "court is not permitted to speculate as to the amount of damages in evaluating whether the jurisdictional amount has been met"); *Siniard v. Ford Motor Co.*, 554 F. Supp. 2d 1276, 1278 (M.D. Ala. 2008) (granting motion to remand in removed <u>wrongful death action</u> on grounds that "defendant and the court may not speculate about the amount in controversy, nor should 'the existence of jurisdiction' be 'divined by looking to the stars'") (citing

*Lowery*, 483 F.3d at 1215).[3]

While this court recognizes that the requisite amount in controversy might exist, "[i]f the court asserts jurisdiction on the basis of the defendant's speculative assertions, it implicitly accepts rank speculation as reasonable inquiry [per Rule 11]. This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts." *Lowery*, 483 F.3d at 1215 n.67.

As *Lowery* explains, "the district court has before it only the limited universe of evidence available . . . [and] if that evidence is insufficient to establish that removal was proper or that jurisdiction is present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id*. at 1214-15; *see also Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (holding that "it was not open for defendants to attempt to show" the requisite amount in controversy per capita where the complaint made insufficient allegations, "[n]or was it open to the

---

[3] The undersigned has also rendered several *Lowery*-based remand decisions from which the analysis and disposition of this case persuasively flow. *See, e.g., Smith v. Parker*, No. 4:08-CV-901-VEH, (Docs. 10, 11) (N.D. Ala. July 11, 2008); *Wright v. Allstate Ins. Co.*, No. 1:08-CV-449-VEH, (Docs. 6, 7) (N.D. Ala. Apr. 23, 2008); *Standfield v. Fleet Global Services*, No. 2:07-CV-2307-VEH, (Docs. 10, 11) (N.D. Ala. Mar. 11, 2008).

district court to speculate that such was in fact the case").[4]  "Under § 1446(b), the operative document must unambiguously establish federal jurisdiction." *Belkin v. Home Depot U.S.A., Inc.*, No. 07-61368-CIV, 2007 WL 4247685, at *1 (S.D. Fla. Dec. 3, 2007) (citing *Lowery*, 483 F.3d at 1214 (citing *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("holding that the document must be 'unequivocally clear and certain'")).

Therefore, "jurisdiction is either evident from the removing documents or remand is appropriate." *Lowery*, 483 F.3d at 1211.  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Id*. at 1215.  Accordingly, Fidelity has not satisfied its preponderance of evidence standard by unambiguously establishing the amount in controversy as mandated under *Lowery*, and the case is due to be remanded for lack of subject matter jurisdiction for this reason.

The court recognizes that Fidelity does further state in its petition that "[s]hould any further question arise as to the existence of the requisite amount in controversy, Fidelity respectfully requests the opportunity to conduct discovery

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

limited to that issue and to thereafter submit post-removal evidence in accordance with the procedure adopted by the 11th Circuit." (Doc. 1 ¶ 13 (citing *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)).

The extent to which any post-removal discovery is permissible in a post-*Lowery* world is open to debate because *Lowery* instructs the district court to focus only upon the removing documents when evaluating the sufficiency of a removal. *Id.* at 1211. Under such a standard, any post-removal responses to requests for admission would apparently be prohibited from serving as a basis in support of removal because they would fall outside the universe of acceptable documents for the court to appropriately consider. *Id.* at 1214-15.

As the *Lowery* court more directly cautions district courts on the subject of post-removal discovery:

> Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery. Doing so impermissibly lightens the defendant's burden of establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. The proper course is remand.

*Id.*, 483 F.3d at 1218 (emphasis added) (footnotes omitted). However, at the same time, prior Eleventh Circuit case law does contemplate at least some allowable range of post-removal evidence to be considered while the case is still pending in federal

13

court.  *See Sierminski*, 216 F.3d at 949 ("We align ourselves with our sister circuits in adopting a more flexible approach, <u>allowing</u> the district court when necessary to consider post-removal evidence in assessing removal jurisdiction." (emphasis added)).

Of course, even if (and to the extent that) consideration of post-removal evidence is still <u>appropriate</u> in light of *Lowery* and *Sierminski*,[5] this does not necessarily mean that a district court is <u>obligated</u> to permit post-removal discovery. In particular, as the *Sierminski* court clarified the contours of its holding:

> We emphasize, as did the court in *Allen*, that "under any manner of proof, the jurisdictional facts that support removal <u>must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time</u>." *Allen*, 63 F.3d at 1335.

*Sierminski*, 216 F.3d at 949 (emphasis added).  Therefore, the court has difficulty envisioning how allowing post-removal discovery as suggested by Fidelity would ever comport with *Sierminski*'s express temporal requirement that the court's

---

[5] In its treatment of post-removal discovery, *Lowery* does not acknowledge the existence of *Sierminski*.  To the extent a conflict exists between the two decisions, *Sierminski* controls by virtue of the first panel rule.  *See United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc)  ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.") (citation omitted); *id.* at 1318 ("It is the firmly established rule of this circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.") (internal quotation marks and citation omitted).

consideration of <u>any</u> post-petition evidence is allowable <u>only to the extent</u> that such information is relevant to the time period in which the case was removed.

Nor has Fidelity cited to any post-*Lowery* decisions that have allowed post-removal <u>discovery</u> to proceed in federal court.   Accordingly, the court, in its discretion, declines Fidelity's invitation that it be allowed to engage in post-petition discovery to substantiate jurisdictional facts that it alleged over one month ago, especially given the uncertainty surrounding the appropriateness of such a request in light of <u>both</u> *Sierminski* <u>and</u> *Lowery*.[6]

### C.   Removal Premised Upon 28 U.S.C. § 1331

Alternatively, Fidelity relies upon 28 U.S.C. § 1331 as a basis for removal, and maintains that this court has authority to exercise federal question jurisdiction over the claims set forth in the Woods' complaint.  Fidelity asserts this position for the first time in its opposition to the Woods' Motion to Remand.  (Doc. 8 at 3-6).  This assertion of subject matter jurisdiction is deficient on both procedural and substantive grounds.

The Woods' primary response to Fidelity's assertion of jurisdiction under § 1331 is that it is untimely under 28 U.S.C. § 1446(b).  In particular, § 1446(b) states:

---

[6]   Nor will this court exercise its inherent power to hold a hearing on jurisdiction.  *Lowery*, 483 F.3d at 1218 n.75.

> <u>The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based,</u> or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added).  Relying upon this statute, the Woods assert the failure of Fidelity to include any reference to § 1331 in its initial removal papers (or to amend their removal petition within the thirty (30)-day time period prescribed by § 1446(b)) procedurally bars it from premising its removal upon federal question jurisdiction.  The court agrees.

In *Fuller v. Exxon Corp.*, 131 F. Supp. 2d 1323, 1327-28 (S.D. Ala. 2001), the court analyzed § 1446(b) and addressed the parameters of jurisdictional amendments as follows:

> A petition for removal of a civil action must be filed within thirty days after the defendant has received a copy of the initial pleading setting forth the claim for relief upon which the action is based. *See* 28 U.S.C. § 1446(b).  A defendant may freely amend the notice of removal within the thirty day period of 28 U.S.C. § 1446(b).  After the thirty day period

16

has expired however, a party may only amend defective allegations of jurisdiction pursuant to 28 U.S.C. § 1653.  Section 1653 does not permit a removing party to assert additional grounds of jurisdiction not included in the original pleading.  *See American Educators Financial Corporation v. Bennett*, 928 F. Supp. 1113, 1115 (M.D. Ala.1996); *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir.1991); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989) (citation omitted); 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3733 at 358-61 (3d ed. 1998) ("[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice . . . .  Completely new grounds for removal may not be added and missing allegations may not be furnished, however."  (footnotes omitted)).

*Id.*; *see also American Educators Financial Corp. v. Bennett*, 928 F. Supp. 1113, 1115 (M.D. Ala. 1996) ("An imperfect or defective allegation is distinguished from a missing allegation, which may not be added by amendment after the 30-day period has expired."); *Stallworth v. Hassan*, No. 08-0144-WS-B, 2008 WL 2080019, at * 1 (S.D. Ala. May 9, 2008) ("There is authority that a notice cannot be amended in this manner more than thirty days after removal, and the United States has cited no authority to the contrary.") (footnotes omitted).

In this instance, Fidelity has not sought to amend (timely or otherwise) its original petition.  Instead, Fidelity asserts that its failure to cite to § 1331 in its notice is not fatal to its removal of this case on that particular ground.  More specifically, Fidelity argues that:

Through Fidelity's prior filings with this Court, including but not limited to the Civil Cover Sheet filed with the Notice of Removal which is attached hereto as Exhibit "A" and incorporated herein by this reference, Defendants have placed this Court on notice that this action is to be determined by federal law.

(Doc. 8 at 4).  Although the court has fully considered Fidelity's position, it cannot agree with it.

As a preliminary matter and as the Woods point out, the Civil Cover Sheet includes the following disclaimer at the top of the page, which expressly disavows the form's use as a supplement to <u>any</u> required legal filing and explains the limited particular purpose of it:

The JS 44 civil cover sheet and the information contained herein <u>neither replace nor supplement the filing and service of pleadings or other papers as required by law</u>, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

(Doc. 13 at 9 (emphasis added); Doc. 8 at Ex. A; *see also* www.alnd.uscourts.gov at Court Info at Court Forms at Civil Cover Sheet).

However, to the extent that it is even appropriate for the court to consider the referenced Civil Cover Sheet,[7] for at least two reasons, the document still does not provide the court with sufficient notice that Fidelity relies upon federal question

---

[7] And, to be clear, this court has concluded that such reliance is <u>not</u> proper.

18

jurisdiction as a basis for removal.  First, the only box marked with an "X" in the "Basis of Jurisdiction" section of the Civil Cover Sheet is the one next to "Diversity". (Doc. 8 at Ex. A § II).  Relatedly, the box next to "Federal Question" is noticeably blank.  (*Id.*).

Second, in the "Cause of Action" section of the Civil Cover Sheet, the following statement is made:  "The claims are based on <u>potential</u> violations of RESPA and <u>diversity exists under § 1332</u>."[8]  (Doc. 8 at Ex. A § VI (emphasis added)).  Therefore, Fidelity ambiguously uses the terminology of "potential" violations of federal law and makes no reference to § 1331.  Further, as explained in more detail, *infra*, the fact that a plaintiff may assert a violation of a Federal law to prove his state law claims does not convert those claims into claims "arising under" Federal law.

Moreover, a review of Fidelity's removal petition evidences that it was not based upon any argument that falls within the parameters of § 1331.  Rather, it is clear that Fidelity's removal was originally, repeatedly, and exclusively based on diversity jurisdiction.  As the notice of removal provides:

> This civil action is removable pursuant to 28 U.S.C. § 1332 in that, there is complete diversity of citizenship between the Plaintiffs and the

---

[8] As Fidelity explains in its opposition to remand, the reference to RESPA on the Civil Cover Sheet relates to "Plaintiffs' claims [that] arise from the servicing of the mortgage loan account, which in this instance is governed by the provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*"  (Doc. 8 at 4)*.*

Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. . . .

This civil action could have been originally filed in this Court pursuant to Section 1332 in that, [sic] there is complete diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

(Doc. 1 at 1; *id.* ¶ 3). Nothing in the notice of removal even hints that Fidelity initially removed this case premised upon federal question jurisdiction. (*See generally* Doc. 1). In particular, nowhere in its notice does Fidelity cite to RESPA (the federal connection suggested in its opposition to the Woods' Motion to Remand)[9] or any other federal cause of action. (*Id.*).

Further, Fidelity has not adequately explained why the reasoning in *Fuller* (or that found in any of the other supportive authorities regarding timeliness cited by the Woods or the court) is either faulty or inapplicable to it. Against this backdrop, the court agrees with the Woods that Fidelity's reliance upon § 1331 to support its removal is untimely under § 1446(b).

---

[9] Fidelity also maintains in its opposition that the involvement of "[p]ooled real estate mortgage loans" and their relationship with the creation of the "real estate mortgage investment conduit ("REMIC")", as well as related REMIC federal regulations, confer federal question jurisdiction upon this court. (Doc. 8 at 5-6). However, Fidelity does not even use the term "REMIC" in its notice. The closest that Fidelity possibly comes to referencing this purported federal issue is indicating, in summarizing the Woods' claims, that Defendants allegedly "breached a pooling and servicing agreement." (Doc. 1 ¶ 11). This limited mention is insufficient.

Alternatively, even if Fidelity's assertion of federal question jurisdiction under § 1331 were timely, it would still not be appropriate for the court to exercise it in this case. In their complaint, the Woods have asserted the following claims: wantonness, negligence, breach of contract relating to their mortgage, breach of contract relating to the pooling and service agreement, unjust enrichment, wrongful foreclosure, slander/defamation, and request for declaratory judgment. (Doc. 1 at Ex. A at Compl. at Counts I-VIII). Noticeably absent from this pleading is any claim asserted under RESPA or any other federal statute.

Because the well-pleaded complaint rule makes the plaintiff the master of the claim, a plaintiff may avoid federal jurisdiction by exclusively relying on state law. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 806 n.2, 809 n.6 (1986) (describing well-pleaded complaint and master of complaint rules). Thus, removal jurisdiction may not be sustained simply because a plaintiff could have asserted a federal claim instead of or in addition to the state claim advanced. *Merrell*, 478 U.S. at 809 n.6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.") (citation omitted).

The Woods' state law claims do not "really and substantially involve [] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Dunlap v. G &L Holding Group, Inc*, 381 F.3d 1285, 1290 (11th Cir. 2004) (citing

21

*Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982)).

Moreover, nothing in RESPA requires the Woods to sue for violations of it rather than

for negligence and other state law claims.   *See, e.g.*, 12 U.S.C. § 2607(6) ("No

provision of State law or regulation that imposes more stringent limitations on

affiliated business arrangements shall be construed as being inconsistent with this

section.").

As the United States Supreme Court explained in *Gully v. First National Bank*

*in Meridian*, 299 U.S. 109 (1936):

> To bring a case within the statute, a right or immunity created by the
> Constitution or laws of the United States must be an element, and an
> essential one, of the plaintiff's cause of action.   The right or immunity
> must be such that it will be supported if the Constitution or laws of the
> United States are given one construction or effect, and defeated if they
> receive another.

*Id*. at 112 (internal citations omitted).   Here, none of these causes of action asserted

by the Woods requires proof of a party's violation of a federal law as a predicate act.

In other words, Fidelity can be found liable  without the Woods' having to prove any

violation of a federal statute.

That a viable defense may exist under RESPA to the Woods' state-based claims

does not confer federal question jurisdiction upon this court either.   "A case may not

be removed to federal court on the basis of a federal defense, including the defense of

pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even

if both parties concede that the federal defense is the only question truly at issue."

*Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393 (1987); *see also Monday v. Coast to*

*Coast Wireless*, No. CV-96-A-1321-N, 1997 WL 114874, at *11 (M.D. Ala. Feb. 19,

1997) ("It is the fact that an action is founded on a claim or right arising under federal

law that makes the action removable under 28 U.S.C. § 1441(b), not the fact that an

interpretation of federal law may affect or determine the outcome of the action.")

(internal quotations and citation omitted).

As the Eleventh Circuit Court of Appeals has clarified the scope of federal

question jurisdiction:

> The fact that a court must apply federal law to a plaintiff's claims or
> construe federal law to determine whether the plaintiff is entitled to relief
> will not confer federal subject matter jurisdiction – the implicated federal
> issue must be *substantial*. . . .  [I]t is now well established that federal
> jurisdiction is not created by the mere fact that proof of violation of a
> federal statute is an element of a plaintiff's state-law cause of action.

*Dunlap*, 381 F.3d at 1291-1292 (emphasis in original) (citations omitted).  Therefore,

whether a federal defense may arise is "<u>far removed</u> from a situation where compliance

with federal law is an essential element of the plaintiff's claims." *Dunlap*, 381 F.3d

at 1292 (emphasis added).

Additionally, while RESPA does contain a provision which preempts

inconsistent state law,[10]  this same section also preserves the application of state law, even when inconsistent, if such local law  "gives greater protection to the consumer." 28 U.S.C. § 2616.  Moreover, it is without question that such a minimal state-law limiting provision does not rise to the level of complete preemption (also sometimes referred to as "super-preemption") in which all claims must be heard in federal court. *See, e.g.,Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999) ("Superpreemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits [under the Employee Retirement Income Security Act of 1974].").  Rather, RESPA contains

---

[10]  12 U.S.C. § 2616 provides in full:

This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not determine that any State law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer. In making these determinations the Secretary shall consult with the appropriate Federal agencies.

*Id.*

language that a claim under it may be brought either in federal court "or in any other court of competent jurisdiction[.]" 12 U.S.C. § 2614. Thus, while this court does have jurisdiction to hear RESPA claims, it does not have exclusive jurisdiction over them. *Id.*

Therefore, this court also substantively lacks subject matter jurisdiction under § 1331. Accordingly, remand is alternatively appropriate for this independent reason.

## III.   CONCLUSION

Thus, as analyzed above, the court lacks subject matter jurisdiction, and the Woods' Motion to Remand is due to be granted. More specifically, Fidelity's reliance upon diversity jurisdiction is improper because the amount in controversy requirement has not been satisfied under *Lowery*, and its alternative reliance upon federal question jurisdiction is untimely under § 1446(b), and regardless is not substantively supported.

Additionally, the court denies Fidelity's request to engage in post-removal discovery. Further, because the jurisdictional issues are straightforward, the court sees no benefit to holding a hearing and, in its discretion, declines to set one. Accordingly, an order will be entered remanding the case to the Circuit Court of DeKalb County.[11]

---

[11]   Because the court determines that its lacks subject matter jurisdiction over this lawsuit, it will leave to the state court any ruling on Fidelity's Motion to Dismiss.

**DONE** and **ORDERED** this the 30th day of September, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge